UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB S. SILVERMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IVERS, et al.,<br><br>　　　　Defendants. | Case No. 17-03700 BLF (PR)<br><br>**ORDER DENYING MOTIONS TO AMEND CLAIMS AND DEFENDANTS; DENYING MOTION TO STRIKE AFFIDAVIT; GRANTING MOTION FOR EXTENSION OF TIME TO FILE OPPOSITION; DIRECTING DEFENDANTS TO FILE REPLY**<br><br>(Docket Nos. 84, 87, 90, 91, 97) |

　　　　Plaintiff, a California inmate, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against staff at the Humboldt County Correctional Facility ("HCCF"). The Court found the second amended complaint, (Docket No. 12, hereinafter "SAC"), stated a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs, and ordered the matter served on Defendants. (Docket No. 18.) Defendants Dean Flint and Duane Christian filed a motion to dismiss the claims against them for failure to plead sufficient facts to establish liability. (Docket No. 33.) The Court granted the motion but with leave to amend for Plaintiff to attempt to provide sufficient facts to support a claim against Defendants. (Docket No. 82.) Plaintiff filed an amendment, as well as several other motions. The Court will conduct an initial review of the amendment and

address the pending motions below.

## DISCUSSION

### A. Motion to Amend Claims Against Defendants Flint and Christian

In response to the Court's Order Granting Defendants' Motion to Dismiss, Plaintiff filed an amendment which was docketed as a motion for leave to amend, (Docket No. 84,) along with exhibits, (Docket No. 84-1). Defendants filed an opposition to the "motion," (Docket No. 85), and Plaintiff filed a reply, (Docket No. 89).

Plaintiff claims that he is a pretrial detainee, and that there is a showing of Defendants Christian and Flint "committing deliberate indifference per Eighth Amendment standards as an affirmative link between the constitutional deprivation." (Docket No. 84 at 1.) Plaintiff asserts that the "affirmative link" is Defendants' "improper control, and, failure to supervise, and Mis-use [*sic*] of the grievance process, under the equal protection clause and due process rights." (*Id.* at 2.) Plaintiff claims that his medical condition, *i.e.*, his "axonal ulnar neuropathy (Nerve Damage)" and carpal tunnel syndrome, was "known to them all." (*Id.*) Plaintiff alleges that Defendant Flint was in a "final decisional position to authorize the treatment to be continued and to allow effective pain relief" and that his failure to do so was "improper control and failure to supervise." (*Id.*) Plaintiff asserts that Defendant Flint knew of his "serious and obvious medical condition" and did not reasonably take available measures medically and chose to allow Plaintiff to remain in pain. (*Id.*) Plaintiff claims that Defendant Christian oversaw the follow up grievances and "blocked" Plaintiff from using the grievance process to grieve Defendant Flint's improper denial of his medical needs. (*Id.* at 3.) Plaintiff alleges that both Defendants "displayed improper control, failure to supervise, deliberate indifference, retaliation, [and] reckless disregard." (*Id.* at 4.) Plaintiff claims that Defendants "conspired with all medical staff involved to totally ignore the Neurologist's findings and intentionally, deliberately,

2

unprofessionally, unlawfully, contrary to policy of standards of care in the community, did willfully, sadistically, maliciously, oppressively, unconstitutionally deny obvious and serious human conditions requirement medical treatment and effective pain relief." (*Id.* at 6.) In support, Plaintiff provides copies of twenty-three grievances he filed; the first grievance is dated April 19, 2017, and the last is dated October 9, 2018. (Ex. 8, Docket No. 84-1 at 14-36.) Not all the grievances were accepted as some were rejected as "frivolous," but where there was a written response at the third and final level of response, it was by either by Defendant Flint or Defendant Christian. (*Id.*)

In opposition, Defendants assert that this proposed amendment fails to set forth any new facts but merely consists of the relevant legal authority applicable to Plaintiff's claim and conclusory arguments that his claim has support. (Docket No. 85 at 2.) Defendants argue that Plaintiff merely "repackaged" the same conclusory allegations from his SAC, and that he is still missing <u>facts</u> to establish that Defendant Christian and Flint knew of the seriousness of Plaintiff's medical condition and still denied him medical care. (*Id.* at 3-4, original emphasis.) In reply, Plaintiff asserts that he has "sufficiently submitted supportive facts that involve the criteria to hold the aforenoted defendants liable for their involvement that the paper-trail displays of record(s) toward substantial medical care, deprivation of medical treatment and effective and proper pain relief – which violates the 14th and 8th Amendments of the United States Constitution's protection." (Docket No. 89 at 1.)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Id.</u> (internal citations omitted). *See, e.g.*, *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642-43 (9th Cir. 2018) (disagreeing with district court that plaintiff's allegations that police officers "beat the crap out of" him was too vague and conclusory to support a legally

3

cognizable claim; plaintiff's use of a colloquial, shorthand phrase made plain that he was alleging that officers' use of force was unreasonably excessive and allegations about resulting injuries reinforced this conclusion). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding under *Twombly* and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations).

From the foregoing decisions, the following "two principles" arise: "First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see, e.g.*, *AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Starr* standard to pleading policy or custom for claims against local government entities); *see also McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (a complaint must make clear "who is being sued, for what relief, and on what theory, with enough detail to guide discovery").

A claim for a violation of a pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment. *See Gordon v.*

4

*County of Orange*, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018). The claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. With regard to the third element, the defendant's conduct must be objectively unreasonable -- "a test that will necessarily turn[] on the facts and circumstances of each particular care." *Id.* (citations and internal quotation marks omitted). The four-part test articulated in *Gordon* requires the plaintiff to prove more than negligence, but less than subjective intent --something akin to reckless disregard. *Id.*

After reviewing the amendment and the attached grievances, the Court finds Plaintiff has failed to set forth sufficient factual allegations to support a Fourteenth Amendment claim for inadequate medical care. Plaintiff's six-page amendment is mostly a recitation of applicable caselaw and legal citations with intermittent conclusory allegations regarding Defendants' actions. (Docket No. 84 at 1-6.) For example, Plaintiff alleges the "affirmative link to deliberate indifference and/or reckless disregard by both [Defendants] is their improper control, and, failure to supervise, and, Mis-use of the grievance process, under the equal protection clause and due process rights." (*Id.* at 3.) However, Plaintiff provides no underlying facts to support this allegation. Specifically, Plaintiff fails to provide any facts explaining what authority Defendants had in their control and how they improperly exercised it; he fails to name the subordinates whom Defendants failed to supervise or describe the allegedly unlawful actions of the subordinates for which Defendants are liable as supervisors; and lastly, Plaintiff fails to

5

explain how Defendants misused the grievance process. To the extent that Plaintiff relies on the copies of the grievances to establish a "paper-trail" of Defendants' unlawful conduct, these documents fail to establish such conduct. The Court summarizes these grievances as follows:

- Grievance dated April 19, 2017: Plaintiff complained of being denied pain medication by Dr. Ivers on April 6, 2017. (Docket No. 84-1 at 14.) The first level response by Nurse April stated that the jail was "actively working on a referral to specialist for your pain in your arm," and that although the jail does not routinely prescribe pain medication, Plaintiff could obtain over the counter pain relief by placing a sick call slip to discuss the matter. (*Id.*) Plaintiff pursued the matter to the third level, where Defendant Christian responded that "[m]edical staff will continue to schedule you for appointments as the doctor deems necessary. As with any referrals the appointments may take time to get." (*Id.*)
- Grievance dated May 10, 2017: Plaintiff alleged that "Lt. Christian was delaying my ability to receive an expedited appointment for pain and treatment for a follow-up appointment from neurology." (*Id.* at 15.) The first level response stated that "schedules for appointments are made by transportation. The impedance would be w/transport and the medical facility your appointment is to, not the Lieutenant." (*Id.*) Plaintiff did not pursue this grievance any further. (*Id.*)
- Grievance dated May 22, 2017: this grievance was rejected because Plaintiff did not "write in space allowed or additional pages"; there is no indication who made the decision to reject the grievance. (*Id.* at 16.)
- Grievance dated May 24, 2017: this grievance was rejected because Plaintiff was requesting copies of his medical records, and there was a separate process for getting such records. (*Id.* at 17.)
- Grievance dated May 23, 2017: Plaintiff complained of the care he received from Dr. Robert Lyell on May 22, 2017. (*Id.* at 18.) Plaintiff alleges that the doctor walked out on him for refusing wear a brace, and that he did not provide any other medical treatment. (*Id.*) Plaintiff sought a referral back to a neurologist, rejected the "placebo brace" that was provided to him, and requested a solution for his ongoing pain. (*Id.*) The first level response by Nurse April stated that all appropriate procedures were followed in getting Plaintiff to see a specialist, who had made recommendations to Plaintiff to alleviate the pain which Plaintiff refused to do, i.e., wear a brace. (*Id.*) At the third level response, Defendant Flint stated that "[n]o pain medication is going to be prescribed [and] a brace has been ordered." (*Id.*)
- Grievance dated June 7, 2017: Plaintiff complained that Dr. Ivers, Dr. Borelson, Nurse April, and Lt. Flint were "conspiring to keep [him] suffering

6

in pain" from an injury on December 22, 2016.  (*Id.* at 19.)  The grievance was rejected as "frivolous" and "repetitive," with no indication as to who made this decision.  (*Id.*)

- Grievance dated June 8, 2017: Plaintiff complained that Dr. Borelson was conspiring with Dr. Ivers, Nurse April, and Lt. Fling "to minimize and trivialize my injury and pain all in effort to not address the core issues of the pain and injury."  (*Id.* at 20.)  This grievance was rejected as "frivolous," with no indication as to who made the decision to reject the grievance.  (*Id.*)
- Grievance dated June 8, 2017: Plaintiff complained that Dr. Ivers "is in violation of Hippocratic Oath and Rights & Respecting Others per CCRC [] and deliberately indifferent to provide an effective pain relief medication and injury treatment with neurology and bone specialist."  (*Id.* at 21.)  Plaintiff further alleged that Dr. Ivers was conspiring with Dr. Borelson, Nurse April, and Lt. Flint.  (*Id.*)  This grievance was rejected as "frivolous," with no indication as to who made the decision to reject the grievance.  (*Id.*)
- Grievance dated June 8, 2017: Plaintiff requested that Lt. Christian be "formally reprimanded" for conspiring and covering up Lt. Flint's conspiracy with Dr. Ivers and Dr. Borelson "all in effort to minimize, trivialize, and routinize my medical injury and pain."  (*Id.* at 22.)  This grievance was rejected as "frivolous," with no indication as to who made the decision to reject the grievance.  (*Id.*)
- Grievance dated June 8, 2017: Plaintiff complained that Lt. Flint was conspiring with Dr. Ivers, Dr. Borelson, and Lt. Christian to "deprive me of effective pain medication and effective medical relief treatment by a neurologist."  (*Id.* at 23.)  This grievance was rejected as "frivolous," with a notation that Plaintiff had "several grievance[s] about the same issue," and that if Plaintiff was dissatisfied, he should "file a writ."  (*Id.*)  There is no indication as to who made the decision to reject the grievance.  (*Id.*)
- Grievance dated June 9, 2017: Plaintiff complained that he was in constant nerve pain and injury, and that the staff was depriving him of effective pain relief and treatment.  (*Id.* at 24.)  He was dissatisfied with a "mere diagnosis and mere brace," but sought a "solution that is effective."  (*Id.*)  This grievance was rejected as "frivolous" and "repetitive" with no indication as to who made the decision to reject the grievance.  (*Id.*)
- Grievance dated June 10, 2017: Plaintiff complained that Lt. Christian was "impeding on the lawful grievance process regarding obtaining relief and attention to correct medical treatment that this facility by law is obligated to."  (*Id.* at 25.)  Plaintiff claims that Defendant Christian is "not allowing parties to address the full scope of the issues but instead thwarting the inmate/my treatment opportunities."  (*Id.*)  This grievance was rejected as "frivolous," with no indication as to who made the decision to reject the grievance.  (*Id.*)  Plaintiff was advised to "file a writ if dissatisfied."  (*Id.*)

7

- Grievance dated June 12, 2017: Plaintiff states that he is "Addressing obtaining 'medical treatment by the neurologist for nerve damage.'" (*Id.* at 26.) Nurse Barnhart responded at the first level, stating that they were waiting for the neurologist to send them the "dictated report from your visit so we can see what was discussed." (*Id.*) At the second level, Nurse April responded that the jail was still attempting to get the office notes from the appointment, and that another request had been made. (*Id.*) Plaintiff pursued the matter to the third level, wanting to know the reason for the continued delay, and Defendant Flint responded, stating, "We can only get the report when it is done [and] sent. They have been requested again." (*Id.*)
- Grievance dated June 12, 2017: Plaintiff requested medical treatment from the bone specialist for his thumb base "which is in obstructed and pained movements." (*Id.* at 27.) The first level response by Nurse April states that a follow-up visit had been provided, and that Plaintiff had been given a brace that the orthopedist had recommended. (*Id.*) Plaintiff was placed on sick call to see how the brace was working. (*Id.*) Plaintiff pursued the matter to the third level, where Defendant Flint responded that the orthopedist had recommended the brace, and that Plaintiff was "set for sick call to review." (*Id.*)
- Grievance dated June 21, 2017: Plaintiff complained that the medical brace "causes pain to the wrist nerve when tightened" and that it was not "doing its intended job." (*Id.* at 28.) Plaintiff stated that it was different from the one the bone specialist originally placed on him, and he requested to try that one again. (*Id.*) The grievance was rejected as "frivolous," with the indication that no more grievances on the same issue would be accepted, and that Plaintiff should "file a writ." (*Id.*) There is no indication who made the decision to reject the grievance.
- Grievance dated December 3, 2017: Plaintiff complained that Clinician Iver was being deliberately different for "influencing others… to not re-institute my medical prescription" because he had at times refused to take the pills. (*Id.* at 29.) Plaintiff stated that he has a "right to refuse medication" for various reasons. (*Id.*) The responses at the first and second levels stated that the medication had been discontinued in accordance with the jail's policy regarding missed/refused medications, and that it would not be reinstated. (*Id.*) At the third level, Defendant Flint stated that the medication was an "over the counter" pain medication which had been discontinued per protocol; however, Plaintiff could "order Tylenol on commissary [and] take it when you want." (*Id.*)
- Grievance dated December 16, 2017: Plaintiff complained that on December 3, 2017, he refused his pill, but if he had been reminded that he had already refused two previous nights, he would have changed his mind; he alleges that Corporal Morgan had his pills discontinued. (*Id.* at 30.) In response, the

8

first and second level responses stated that "correctional deputies do not dictate when/if medication are cancelled, medical does" and that it was the medical staff who decided to discontinue Plaintiff's pills because of multiple refusals. (*Id.*) At the third level, Defendant Christian pointed out that by Plaintiff's own admission, he initially refused the meds; "corrections nor medical staff are required to wait to see if you change your mind." (*Id.*)

- Grievance dated December 15, 2017: Plaintiff complaint that "[w]hat Iver and Lieutenant Flint are doing about denying me my pain medication is illegal and deliberately indifferent." (*Id.* at 31.) Plaintiff asserts that there is "no policy nor code of law to deny me the medications that was prescribed." (*Id.*) The first and second level responses stated that since Plaintiff refused to take the pain medications as prescribed, the orders were discontinued in accordance with policy. (*Id.*) At the third level, Defendant Christian stated that "officers and nursing staff are not required to ask you multiple times if you want your medication. You initially refused your medication. If you want your meds do not refuse them."
- Grievance dated December 21, 2017: The copy of this grievance is not very legible, but it was rejected as "frivolous" and "repetitive," with no indication as to who made the decision. (*Id.* at 32.)
- Grievance dated December 22, 2017: Plaintiff claimed that he was being subject to retaliation and deliberate indifference by Lt. Christian, Flint, and clinician Iver. (*Id.* at 33.) Plaintiff asserts that he should have been forewarned about the jail's "medical prescription consumption policy," and sought reinstatement of the medication. (*Id.*) The grievance was rejected as "frivolous" with the notation "multiple grievances on this subject." (*Id.*) There is no indication who made this decision. (*Id.*)
- Grievance dated December 25, 2017: Plaintiff complained that he requested of Lt. Flint, Christian, and Iver "to obtain 'what' policy, law, code all are using to support depriving minimal aid to me of any pain relief." (*Id.* at 34.) The response at the third level by Defendant Flint stated: "You keep asking what policy is used [and] you have been told more than once. The medication in question is Tylenol [and] it was discontinued because you refused it too many times. It is available on commissary if you want it." (*Id.*)
- Grievance dated January 5, 2018: Plaintiff complained that Defendant Flint was not providing him with a printed copy of the code or policy which was the basis for cancelling his medication. (*Id.* at 35.) The grievance was rejected as "frivolous" and as a "repetitive grievance," with no indication as to who made that decision. (*Id.*)
- Grievance dated October 9, 2018: Plaintiff complained of ongoing pain from injuries received on December 22, 2016, and sought a referral to neurology for further diagnosis and treatment. (*Id.* at 36.) The grievance was marked

9

"denied already grieved," by an illegible author. (*Id.*)

These grievances show that Plaintiff filed repetitive grievances related to pain medication, a brace to manage his carpal tunnel, and referral to a specialist. However, Defendants Christian and Flint's responses at the third level does not establish deliberate indifference. There is no indication in their responses that Plaintiff's condition was being ignored or left untreated. For example, Defendant Christian's response to the first grievance dated April 19, 2017, stated that appointments with a specialist would be scheduled "as the doctor deems necessary," which indicates that he was deferring to the doctor's judgment and did not obstruct or delay necessary medical treatment. *See supra* at 6. Defendant Flint also noted that Plaintiff was scheduled for a sick call visit in June 2017, indicating that he did not obstruct or deny Plaintiff medical treatment. *Id.* at 8. With respect to the discontinuation of pain medication, the grievances clearly show that Plaintiff did in fact refuse to take medication several times. The grievance responses show that based on Plaintiff's repeated refusals, the medical staff decided to discontinue providing the medication under jail policy; the medication that was discontinued was Tylenol, an over the counter medication. *Id.* at 9. There is no indication that Defendants Christian and Flint were involved in that decision. Furthermore, Defendant Flint advised Plaintiff several times that although the jail would not be reinstating the medication, he could obtain Tylenol through the commissary for himself and take it as needed. *Id.* at 8-9.

Based on the foregoing, Plaintiff has failed to allege sufficient facts to establish all four elements for a Fourteenth Amendment claim against Defendants Christian and Flint. The fact that Defendants did not produce for Plaintiff a written copy of the specific policy which medical staff used to discontinue his medication does not establish that they were acting with deliberate indifference. Accordingly, the Court finds the amendment does not contain sufficient allegations of underlying facts to support a Fourteenth Amendment medical claim, and the few factual allegations that are provided, taken as true, do not plausibly suggest an entitlement to relief. *See Starr*, 652 F.3d at 1216.

Plaintiff has already been afforded an opportunity to amend, and this Court has broad discretion to deny leave to amend where Plaintiff has already been granted leave to file an amended complaint. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Accordingly, the claims against Defendants Christian and Flint are DISMISSED for failure to state a claim.

### B. Motion for Leave to Amend to Add New Defendants

Plaintiff also filed a motion for leave to amend the complaint to add Melissa McKenzie and Robert Lyell as new Defendants to this action. (Docket No. 87.) Plaintiff claims that Dr. McKenzie was the neurologist who diagnosed him with axonal ulnar neuropathy and carpal tunnel syndrome, and that she did not make a referral for treatment or pain relief which amounts to deliberate indifference. (*Id.* at 1-2.) Defendants filed an objection and opposition the motion, (Docket No. 88), and Plaintiff filed a reply, (Docket No. 93).

Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994); *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981). A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). A district court should deny leave to amend on futility grounds if "it appears beyond doubt that the plaintiff's proposed amended complaint would not remedy the deficiencies in the previous complaint." *Adam v. Hawaii*, 235 F.3d 1160, 1164 (9th Cir. 2001). Put differently, futility of amendment frequently means that it is not factually possible for plaintiff to amend the complaint so as to cure the deficiencies. *Schmier v. United States Court of Appeals*, 279 F.3d 817, 824 (9th Cir. 2002).

As Defendants point out in opposition, (Docket No. 88 at 2), Plaintiff already previously moved to add Dr. Lyell as a Defendant; he was an outside orthopedic specialist who performed an assessment and evaluation of Plaintiff's condition. (Docket No. 82 at 9-10.) The Court denied the motion as brought in bad faith and futile because Dr. Lyell was not a state actor. (*Id.* at 11.) Defendants assert that Plaintiff's motion to add Dr. McKenzie is equally flawed based upon undue delay, as her information was available in Plaintiff's medical file all this time. (Docket No. 88 at 2-3.) Plaintiff asserts in reply that Dr. Lyell is a "state/county contractor, employed (when involved with plaintiff) by the county," and that he recently learned from another laymen that he could add "outside contractors" to his civil action. (Docket No. 93 at 1.) Plaintiff asserts that he also only recently came to understand that the neurologist, too, may be named. (*Id.* at 2.)

Action taken by private individuals or organizations may be under color of state law "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity…. [N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001) (internal quotation marks omitted). The Court has found state action when a challenged activity results from the State's exercise of coercive power; when the State provides significant encouragement for the activity; or when a private actor operates as a willful participant in joint activity with the State. *See id.* at 296.

Here, Plaintiff asserts that these individuals may be added because they are contractors paid by the State who were involved with his medical care. (Docket No. 93 at 2.) However, being paid by the State is not sufficient to establish that private individuals

12

are always acting under the color of state law. Rather, there must be "such a close nexus" between the State and Drs. McKenzie and Lyell's actions that their seermingly private behavior may be fairly treated as that of the State itself. *See Brentwood Academy*, 531 U.S. at 296. However, there are no allegations that the State either provided significant encouragement for Drs. McKenzie and Lyell's actions, or that they operated as willful participants in joint activity with the State for the Court to find there has been state action. *Id*. Rather, the medical records on which Plaintiff relies indicate that Drs. McKenzie and Lyell performed independent evaluations and assessments of Plaintiff's medical condition at the request of the jail medical staff. Although Plaintiff asserts that these doctors should have taken further action by "encourage[ing]" and "confront[ing]" the HCCF medical staff regarding his treatment, (Docket No. 87 at 2), there is no allegation that Drs. McKenzie and Lyell had any actual authority or power to change the conditions under which Plaintiff was confined. (*Id.* at 2.) Rather, Dr. McKenzie forwarded two letters of inquiry from Plaintiff back to HCCF, indicating that since she was not one of the treating physicians, she would not be responding to the letters herself. (*Id.* at 5.) Her referral of the matter back to HCCF indicates that Dr. McKenzie recognized that she had no control over Plaintiff's treatment and was forwarding the inquiries to HCCF for further action.

Based on the foregoing, Plaintiff's motion to amend and add new defendants is DENIED as futile because Drs. McKenzie and Lyell are private individuals and their actions were not under color of state law such that Plaintiff cannot state a § 1983 claim against them. *See Janicki Logging Co.*, 42 F.3d at 566.

C.     **Motion to Amend to Add New Claims**

Plaintiff filed another "motion to amend" to add claims of conspiracy and retaliation against Defendants Iver, Lien, Burelson, Barnhart, and Lyell. (Docket No. 91.) As stated above, the Court has denied Plaintiff's motion to add Dr. Lyell as a defendant in this action. With respect to Defendants Iver, Lien and Burelson, this single page motion

13

simply fails to state any facts to support new claims of conspiracy and retaliation. (*Id.*) In his reply, Plaintiff alleges that Defendants "all partook to provide Plaintiff a 'supportless' brace" and "all partook to not attend to the 'serious findings' by the neurologist," and that "all medical request and grievances were 'denied' with a conspiracy in just that, based on plaintiff's conduct to file lawsuits and berate misconduct-enflaming retaliation to conspire to deprive medically, and keep him in pain." (Docket No. 94 at 2.)

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement. *Id.* Conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983. *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). Plaintiff's conclusory allegations that "all partook" in this or that action are not sufficient to establish that Defendants engaged in a "meeting of the minds" to support a conspiracy claim. *Id.* Accordingly, the motion to amend this action to add a conspiracy claim must be denied for failure to state a claim.

With respect to retaliation, "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Plaintiff makes no allegation that Defendants' actions chilled the exercise of his First Amendment rights, and that their actions did not reasonably advance a legitimate correctional goal. Accordingly, the motion to amend this action to add a retaliation claim must be denied for failure to state

14

a claim.

### D. Motion to Strike Affidavit

Plaintiff filed a motion to strike the affidavit of John Levin from Defendants' motion for summary judgment under Federal Rules of Evidence 702, as improper expert testimony because Dr. Levin is not a specialist in neurology. (Docket No. 97.) Defendants filed an opposition. (Docket No. 98.)

Defendants assert in opposition that they submit Dr. Levin's testimony not as an expert in neurology but simply as a qualified physician to give an opinion about the care provided to Plaintiff by the jail medical staff and their reliance on the assessment that was requested from the orthopedic specialist. (Docket No. 98 at 2.) Dr. Levin's testimony does not give an opinion with respect to the assessment by the orthopedic specialist or the neurologist. (*Id.*; Docket No. 86-4.) The Court agrees, and finds that Dr. Levin's testimony is admissible under Rule 702, as it addresses medical expertise that are "beyond the common knowledge of the average layperson," *United States v. Hanna,* 293 F.3d 1080, 1086 (9th Cir. 2002), and it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Accordingly, the motion to strike the testimony is DENIED as without merit.

### E. Motion for Extension of Time

Lastly, Plaintiff filed a motion for an extension of time to file opposition to Defendants' motion for summary judgment[1] due to a pending transfer to a hospital to receive medical care. (Docket No. 90.) Good cause appearing, the motion is GRANTED. Accordingly, Plaintiff's opposition filed on September 25, 2019, (Docket No. 99), is deemed timely filed. Defendants shall file a reply by the deadline provided below.

---

[1] In response to a court order denying their first motion for summary judgment without prejudice, (Docket No. 83), Defendants Iver Lien, Dr. Michael Burleson, and April Barnhart filed a renewed motion for summary judgment. (Docket No. 86.)

15

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion to file an amendment to state claims against Defendants Christian and Flint is DENIED. (Docket No. 84.) The Clerk shall terminate Defendants Christian and Flint from this action as there are no claims against them.

2. Plaintiff's motion for leave to amend to add new Defendants, Drs. McKenzie and Lyell, is DENIED as futile. (Docket No. 87.)

3. Plaintiff's motion to amend to add new claims is DENIED. (Docket No. 91.)

4. Plaintiff's motion to strike Dr. Levin's affidavit is DENIED. (Docket No. 97.)

5. Plaintiff's motion for an extension of time to file opposition to Defendants Iver Lien, Dr. Michael Burleson, and April Barnhart's motion for summary judgment is GRANTED. (Docket No. 90.) Plaintiff's opposition filed on September 25, 2019, is deemed timely filed. Defendants shall file a reply to Plaintiff's opposition **no later than fourteen (14) days** from the date this order is filed. Defendants' summary judgment motion, (Docket No. 86), shall be deemed submitted on the date Defendants' reply is due.

This order terminates Docket Nos. 84, 87, 90, 91, and 97.

**IT IS SO ORDERED.**

Dated: __November 4, 2019__

BETH LABSON FREEMAN
United States District Judge

Order Addressing Pending Motion
P:\PRO-SE\BLF\CR.17\03700Silverman_motions&eot.opp.docx

16